IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**DIAMOND ART CLUB, LLC,**

        **Plaintiff,**

V.

**COKE MORGAN STEWART, in her Official Capacity Performing the Functions and Duties of the Director of the United States Patent and Trademark Office, and the UNITED STATES PATENT AND TRADEMARK OFFICE,**

        **Defendants.**

**CIVIL ACTION NO.:**

## COMPLAINT

Plaintiff Diamond Art Club, LLC ("DAC" or "Plaintiff"), by and through its undersigned counsel, presents this Complaint against Defendant Coke Morgan Stewart, in her official capacity performing the functions and duties of the Director of the United States Patent and Trademark Office ("USPTO"), and the USPTO, seeking an order directing the USPTO to vacate the sanctions imposed in the Final Order – Imposition of Sanctions ("Final Order") including by reinstating United States Patent Application No. 16/284,688 (the "'688 Application"). A true and correct copy of the Final Order is attached as Exhibit A.

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, challenging Defendants' imposition of sanctions relative to the '688 Application, which include but are not limited to the termination of the '688 Application.

2. This suit is brought under 5 U.S.C. § 706(2). Among other things, Defendants' conduct is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,

in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right and without observance of procedure required by law.

3. The Defendants terminated the '688 Application and, on information and belief, thousands of other applications on the grounds that a patent service firm, Wayne & King, allegedly filed patent applications using the S-signature of a licensed practitioner, Jie Yang ("Practitioner Jie Yang"), without Practitioner Jie Yang's knowledge or approval.

4. Neither Plaintiff nor the Inventors had any knowledge of the misconduct described by the Defendants. Rather, Plaintiff and those associated were informed and believed that the '688 Application was properly reviewed and filed by Practitioner Jie Yang and paid for the professional services associated with a licensed practitioner.

5. If the misconduct described by the Defendants did in fact occur, Plaintiff was the victim of the misconduct. Plaintiff would not have agreed to allow Practitioner Jie Yang to act as the prosecutor of the '688 Application, and would not have paid the associated professional fees, had Plaintiff known that Practitioner Jie Yang would not review and file the application. Plaintiff would not have agreed to violate USPTO procedure and did not do so.

6. The Defendants' imposition of sanctions is, at least as to the Plaintiff and the '688 Application, violative of 5 U.S.C. § 706(2).

## PARTIES

7. Plaintiff Diamond Art Club is a Florida corporation with its principal place of business in Miami, Florida. Plaintiff is the owner by assignment of all rights, title and license to the '688 Application.

8. Defendant Coke Morgan Stewart is the Acting Director of the USPTO pending the Presidential nomination and Senate confirmation of another individual for that position.

Stewart is named as Defendant in this case solely in her official capacity. Though Acting Director Stewart is named as Defendant in her official capacity, the unlawful activities alleged here originate with actions and inactions committed by her predecessors.

9. Defendant the United States Patent and Trademark Office is a United States government administrative agency within the Department of Commerce, having its principal place of business in Alexandria, Virginia. The USPTO is statutorily vested with the authority to grant and issue patents, 35 U.S.C. § 2.

## JURISDICTION AND VENUE

10. This action arises under the APA, 5 U.S.C. §§ 701-706.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

12. This Court has jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency of the United States or any agency thereof to perform a duty owed to plaintiff" and, accordingly, jurisdiction in this matter under 28 U.S.C. § 1361.

13. Under 5 U.S.C. § 702, Defendants have waived sovereign immunity for purposes of this suit.

14. Plaintiff's claim for declaratory and injunctive relief is authorized under 28 U.S.C. §§ 2201 and 2202, by 5 U.S.C. §§ 702–706, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

15. Venue is proper in this District under 28 U.S.C. § 1391 and 5 U.S.C. § 703.

16. Agency actions unlawfully undertaken are deemed under the APA to be final agency actions subject to judicial review under 5 U.S.C. § 704. Agency actions unlawfully

withheld are deemed under the APA to be final agency actions subject to judicial review under 5 U.S.C. § 704.

## FACTUAL BASES

### A. The '688 Application

17. The subject matter of the '688 Application relates to diamond art projects. These projects combine cross-stich and paint-by-numbers, such that users apply sparkling resin rhinestones on a color-coded canvas.

18. The inventors on the '688 Application are Jinping Wang ("Inventor Wang") and Alexandre Perrier ("Inventor Perrier" and, with Inventor Wang, the "Inventors"). As set forth therein, the Inventors developed a novel invention for canvas flocking diamond projects. The claimed invention allows for flocked diamond pictures while avoiding many of the disadvantages associated with the prior art flocking solutions.

19. The Inventors assigned their rights, title and license to subject matter of the '688 Application to Plaintiff. The assignments (Assignment No. 1 Reel/Frame No. 055204/0377 and Assignment No. 2 Reel/Frame No. 054932/0076) are publicly available on the USPTO's website.[1]

20. Through an agency, Inventor Wang retained a USPTO practitioner, Practitioner Jie Yang, to file and prosecute the application relating to the invention. Inventor Wang was informed that Practitioner Jie Yang was an attorney licensed in the United States, was admitted to practice by the USPTO, and would personally oversee the application. Neither Inventor Wang, Inventor Perrier, nor Plaintiff had any reason to doubt that this would in fact occur.

---

[1] https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=16284688&type=applNum

21. The Inventors and the assignee, Plaintiff, understood that the application was being handled by a licensed USPTO practitioner and paid the professional fees associated with such work.

22. The '688 Application was filed on February 5, 2019. Therein, the applicant properly asserted small entity status, pursuant to 27 C.F.R. 1.27.

23. The '688 Application accurately and truthfully sets forth the invention that was devised by the Inventors.

24. The '688 Application included inventor declarations, pursuant to 37 C.F.R. 1.63, signed by the Inventors. Therein, the Inventors declared under oath that they were the original inventors of the claimed invention, that they had reviewed and understood the contents of the application, including the claims set forth therein, and acknowledging that they were under a duty to disclose to the USPTO all information known to them to be material to the patentability of the claimed invention.

25. The Defendants have not concluded nor identified any inaccurate or incomplete statements set forth in the aforementioned inventor declarations as a basis for terminating the '688 Application.

26. The prosecution history of the '688 Application indicates that the declarations were filed by Practitioner Jie Yang on February 5, 2019, with Registration No. 77665. The '688 Application was filed using the login credentials assigned to Practitioner Jie Yang.

27. On August 20, 2020, the USPTO published the '688 Application pursuant to 37 C.F.R. 1.211 as Publication No. US 2020/0262235 A1., a copy of which is attached as <u>Exhibit B</u>.

28. On or around February 1, 2021, the name of the applicant was changed to Diamond Art Club, LLC (Plaintiff).

29. On or around February 1, 2021, Plaintiff changed the prosecuting attorney to James Yang ("Currently Assigned Practitioner"), who was then with Klein, O'Neill & Singh, LLP.

30. On March 9, 2021, the Currently Assigned Practitioner submitted a second Information Disclosure Statement by Applicant, a copy of which is attached as Exhibit C, which identified additional prior art.

31. On July 30, 2021, the Currently Assigned Practitioner, filed a Preliminary Amendment, a copy of which is attached as Exhibit D.

32. The first office action issued on February 28, 2022, and set forth a restriction requirement. On behalf of Plaintiff, Currently Assigned Practitioner filed a Response to the Restriction Requirement on April 13, 2022. A copy of the office action and response is attached as Exhibit E.

33. Prosecution in earnest began on June 23, 2022, with the issuance of the second office action. This office action and included rejections pursuant to 35 U.S.C. § 102, 112, and 103. Thereafter followed a series of office actions, responses to office actions, and at least one examiner interview. On June 1, 2023, the Currently Assigned Practitioner, on behalf of the applicant, filed a Petition for Extension of Time Under 37 C.F.R. 1.136(a), paying the requisite fees and extending the time for prosecution of the proposed claims.

**B.     The Final Order Terminating the Application**

34. On August 4, 2023, Brian E. Hanlon, the Assistant Commissioner of Patents, issued a Show Cause Order. The Show Cause Order noted, in part, that the USPTO had "reason to believe that there has been an unauthorized use of the name and impermissible entry of the S-

signature of practitioner Jie Yang in this application." A true and correct copy of the Show Cause Order is attached as Exhibit F.

35. Plaintiff submitted a Response to Show Cause Order on October 2, 2023. There, Plaintiff noted, *inter alia*, that the application was no longer associated with Practitioner Jie Yang, that neither the Inventors nor the Plaintiff assignee had any knowledge about the accusations set forth in the Show Cause Order, and that Plaintiff should not and cannot be punished for conduct about which it had no knowledge. A true and correct copy of the Response to Show Cause Order is attached as Exhibit G.

36. Almost one year later, on September 18, 2024, Mr. Hanlon, on behalf of the USPTO, issued the Final Order. Exhibit A. The Final Order imposed sanctions and terminated the application pursuant to 37 C.F.R. 11.18(c).

**C.**    **The USPTO Improperly Sanctions Plaintiff, a Victim of the Alleged Misconduct**

37. The sanctions imposed in the Final Order are contrary to law, are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right and without observance of procedure required by law.

38. The Final Order makes no findings that Plaintiff or the Inventors had any knowledge regarding any improper use of Practitioner Jie Yang's signature or log in credentials. The Final Order in fact sets aside and disregards the lack of culpability of Plaintiff and the Inventors. The Final Order notes that "[a]lthough it is recognized that the applicant and other persons or entities involved in the application may have been unaware of the conduct at issue,

this consideration does not alleviate the rule violations that have occurred, nor the significant public policy interest in protecting the integrity of the U.S. patent system." *See* Exhibit A at 6. [2]

39. The Final Order is based on documents and evidence that was not presented to the Plaintiff or the Inventors.

40. The findings in the Final Order are predicated, in part, upon a settlement agreement that resolved all disciplinary action entered into between the Deputy General Counsel for Enrollment and Discipline and the Director of Enrollment and Discipline and Practitioner Jie Yang in Proceeding No. D2024-04 and approved by the USPTO in a final order ("Disciplinary Final Order").  A true and correct copy of the Disciplinary Final Order is attached as Exhibit H. Plaintiff was not a party to the proceedings and was not provided with any of the evidence introduced therein.

41. The Findings in the Final Order are also predicated upon, in part, an unsworn letter dated December 19, 2022 from Practitioner Jie Yang to the USPTO that was heavily redacted.  Exhibit A at 10-14.  On information and belief, the USPTO redacted and withheld portions of that letter.  In the portions that were not redacted, Practitioner Jie Yang referenced a spreadsheet that contains names of "Chinese Entities" that were allegedly involved in the misconduct and noted that she could not attest that the list was accurate or complete.  Exhibit A at 13.  Plaintiff was not provided with a copy of the spreadsheet referenced in the letter.

42. The Final Order purports to conclude that there was misconduct associated with the use of Practitioner Jie Yang's S-signature on the '688 Application.  The Final Order references evidence suggesting that Practitioner Jie Yang's s-signature was misused on many

---

[2] Pin citations reference the page number of the PDF, and not the page numbers identified in the header of the document.

8

applications. The USPTO and the Final Order fails, however, to address the fact that the '688 Application was filed with Practitioner Jie Yang's USPTO website access credentials. Plaintiff is not aware of any evidence or USPTO finding suggesting that Practitioner Jie Yang's USPTO website access credentials were misappropriated and misused.

43. The Final Order references evidence suggesting that, "between 2020 and 2022, the signature of the practitioner [Practitioner Jie Yang] was used in applications without involvement from the practitioner." Exhibit A at 5. There is, however, no evidence or assertion that Practitioner Jie Yang's signature and/or credentials were used to sign or file any documents relating to the '688 Application in 2020, 2021 or 2022. Instead, the record establishes that all documents containing Practitioner Jie Yang's signature were filed in 2019.

44. The Final Order notes that the evidence supports a finding that false signatures were present on certifications of micro-entity status and responses to office actions. There is, however, no evidence or assertion that Practitioner Jie Yang's signature and/or credentials were used to sign or file a certification of micro-entity status or any responses to office actions relating to the '688 Application.

45. The Final Order states that Plaintiff and the Inventors should, as a matter of law, be bound by the acts of their representatives.

46. The Final Order issued sweeping sanctions against Plaintiff and the Inventors, terminating the '688 Application and precluding Plaintiff and the Inventors from claiming priority based on the filing date of the '688 Application. More specifically, the Final Order imposed sanctions as follows pursuant to 37 C.F.R. 11.18(c):

(1) Termination of the proceedings in this application, effective as of the date of this letter;

9

(2) Precluding the submission of any petition to revive this application or any petition to withdraw a holding of abandonment;

(3) Precluding the submission of an Application Data Sheet or any other paper which includes a claim of benefit to the filing date of this application; and

(4) Striking from the record all documents containing the signature of the practitioner Jie Yang.  Although a stricken document will not actually be removed from the application file, the application is considered to be deficient to the same extent as if the document had not been filed; this may result in the application being abandoned.

47. Section (a) of 37 C.F.R. 11.18 provides that each filing with the USPTO must bear the signature of the filing practitioner, personally signed or inserted by the practitioner.

48. Section (c) of 37 C.F.R. 11.18 sets forth the remedies available for the violation for section (a).  37 CFR 11.18(c) was published in 73 FR 47689. This Federal Register states: "These sanctions in §11.18(c) conform to those discussed in conjunction with the 1993 Amendment to Rule 11 of the Federal Rules of Civil Procedure. . . .  The Office anticipates that in taking action under § 11.18 in applying sanctions, it would use the proper considerations utilized in issuing sanctions or taking action under Rule 11 sanctions."

49. The Federal Register comment refers to the notes to the 1993 Amendment to Rule 11, which state that "[t]hese sanctions should be imposed on the persons ... who have violated the rule or who may be determined to be responsible for the violation."

50. The Defendants did not and could not find that the Plaintiff or the Inventors violated any rule.

51. Defendants' imposition of sanctions relative to the '688 Application was and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right and without observance of procedure required by law.

## COUNT 1
**(Final Agency Action in Violation of 5 U.S.C. §§ 706(2) as to the Final Order)**

52. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

53. The Final Order constitutes a final agency action of the Patent Office within the meaning of 5 U.S.C. § 704.

54. There are no administrative remedies available to Plaintiff to challenge the Final Order.

55. Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right and without observance of procedure required by law.

56. The Final Order terminating the '688 Application violated § 706(2) because it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, or short of a statutory right and without observance of procedure required by law.

*[Remainder of this page is intentionally left blank.]*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests the following judgment and relief:

A. That this Court set aside the Final Order;

B. That this Court declare that the Plaintiff is not subject to sanctions, terminating or otherwise, pursuant to 37 C.F.R. 11.18(c);

C. That this Court issue an Order directing Defendants to revive the '688 Application to determine the patentability of the claims proposed therein;

D. That this Court award Plaintiff its costs and attorneys' fees and expenses as allowed by law; and

E. That this Court provide such other and further relief as it deems appropriate.

Dated: February 20, 2025                    Respectfully submitted,

*/s/ Diana Lyn Curtis Shutzer*
Diana Lyn Curtis Shutzer (Va. Bar No. 89392)
**FOX ROTHSCHILD LLP**
2020 K Street, N.W., Suite 500
Washington, DC 20006
Phone: (202) 461-3100
Fax: (202) 461-3102
dshutzer@foxrothschild.com

*Counsel for Plaintiff Diamond Art Club, LLC*