IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DIAMOND ART CLUB, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | 1:25-cv-00341 (PTG/WEF) |
| | ) | |
| COKE MORGAN STEWART *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment. Dkts. 16, 21. Plaintiff Diamond Art Club ("DAC") challenges the U.S. Patent and Trademark Office's ("USPTO") administrative decision to impose sanctions onto Plaintiff, including termination of its patent application, due to the misconduct of its patent representative. Dkt. 1. According to Plaintiff, the USPTO's decision is arbitrary and capricious under the Administrative Procedure Act ("APA"). Defendants USPTO and Coke Morgan Stewart, Director of the USPTO, contend that the agency reached a proper decision on the basis of the administrative record and the legal precedent holding that principals are responsible for their agents' actions. Both parties now seek summary judgment on their respective positions. For the reasons set forth below, the Court grants summary judgment in favor of Defendants.

1

## Background[1]

This dispute arises out of the prosecution of the '688 Application, a patent application for diamond art projects invented by Jinping Wang ("Inventor Wang") and Alexandre Perrier ("Inventor Perrier") (collectively, the "Inventors"). Dkt. 22[2] at 9. The invention is for a "canvas flocking diamond picture." AR 58. "These projects combine cross-stitch and paint-by-numbers, such that users apply sparkling resin rhinestones on a color-coded canvas." Dkt. 17 at 5 n.3; Dkt. 22 at 9; AR 58. Plaintiff DAC is the current assignee of the '688 Application patent.

The Inventors retained the firm Wayne & King (W&K), operated by Yu "Mark" Wang ("Dr. Wang"), to prosecute and file the '688 Application before the USPTO. AR 3; Dkt. 22 at 9-10. On February 25, 2019, W&K filed the '688 Application. AR 1, 67. That same day, Inventor Perrier assigned his rights to the '688 Application to Inventor Wang, and Inventor Wang assigned W&K as power of attorney. AR 57, 3.

At the time of filing, Dr. Wang was neither a registered practitioner nor licensed to practice law. AR 486. During the process of filing the '688 Application, W&K instead used the electronic signature of USPTO Practitioner Jie Yang on at least five documents:

(1) The document originating the application;

(2) the Utility Patent Application Transmittal;

(3) the Information Disclosure Statement by Applicant;

(4) the Application Data Sheet; and

(5) two PAIR Correspondence Address/Fee Address Change forms.

---

[1] The facts recited here are undisputed and supported by the administrative record of the proceedings before the USPTO. Dkts. 14-1, 14-2, 14-3. The Court uses the citation "AR" to refer to the administrative record as well as the pagination used in the administrative record.

[2] The brief filed under Dkt. 22 does not include page numbers. Accordingly, the pincites refer to the page number on the docket headers.

2

AR 1, 6, 50, 70, 71; Dkt. 17 at 6; Dkt. 22 at 11. At the time of filing, Jie Yang was a registered patent agent licensed by the USPTO but not yet a licensed attorney. AR 486, 512. However, Jie Yang had not personally signed any of these documents. AR 488; Dkt. 22 at 12. Rather, Dr. Wang had been using Jie Yang's signature and credentials on W&K's "patent applications and related filings and fil[ing] them with the USPTO under authority" since December 2018.[3] AR 504.

On January 15, 2021, Inventor Wang assigned his rights to the '688 Application to Plaintiff DAC, which became the patent applicant on February 11, 2021. AR 78-79, 82. Immediately thereafter, Plaintiff DAC replaced W&K with Klein, O'Neill & Singh and granted a new power of attorney to Practitioner James C. Yang.[4] AR 73; Dkt. 17 at 7. Inventor Wang had been an associate of DAC and Inventor Perrier, the second of the original inventors, was a Managing Member of DAC in February 2021. Inventor Perrier signed the power of attorney on behalf of DAC. AR 73, 445.

Between February and July 2021, Practitioner James Yang filed revised documents as to the '688 Application with his signature. Dkt. 17 at 7. Between 2022 and 2024, Practitioner James Yang represented Plaintiff during the patent prosecution and in relation to the USPTO's sanctions

_____

[3] The record is inconsistent as to the Inventors' contact with Jie Yang. According to Jie Yang's statements to the USPTO, Dr. Wang, her former classmate and W&K's owner, told her that she could gain practical patent prosecution experience working at W&K; subsequently, without her knowledge, he established W&K credentials on her behalf. AR 486-87.

Plaintiff, however, states at several points that the Inventors retained Practitioner Jie Yang. Dkt. 17 at 6; AR 445. Per Plaintiff, Inventor Wang communicated with an intermediary patent agency in China, which represented to him that "Jie Yang was their coordinating attorney in the United States." *Id.* Plaintiff nevertheless did not dispute Defendants' statement of fact that "the record does not reflect any inventor ever had direct contact with Practitioner Yang." Dkt. 22 at 10.

[4] Mr. Yang has no affiliation to Practitioner Jie Yang. AR 443; Dkt. 17 at 7 n.8.

core to the instant dispute.  Dkt. 22 at 13; AR 169-74, 235-45, 312-19, 338-45, 406-13, 425-30, 463.

In October 2022, Practitioner Jie Yang received a request for information from the USPTO's Office of Enrollment and Discipline inquiring about certain certifications that had been filed bearing her "apparent signature." AR 434.  On December 19, 2022, Practitioner Jie Yang sent a letter to the USPTO "regarding the apparent unauthorized practice of law on certain patent applications prepared by non-registered practitioners." AR 510.  The letter noted that Mark Wang, whom Jie Yang knew from school, had represented to her that he needed to use her patent agent name to file patents, in exchange for her to receive patent experience. AR 511.  Ms. Yang claimed she "knew nothing about these certifications or the cases in which they were filed." AR 513.  The letter also noted that to her knowledge, "the patent applicants and patent owners themselves are unaware of anything being done improperly with their applications." AR 514.

On August 4, 2023, the USPTO issued a Show Cause Order to DAC stating that the agency had "reason to believe that there has been an unauthorized use of the name and impermissible entry of the S-signature of practitioner Jie Yang in this application." AR 433.  On September 29, 2023, Practitioner James Yang filed a response on behalf of DAC. AR 442-47.  The response emphasized that the Inventors were not aware of the unauthorized use of Jie Yang's signature. AR 444-45.

On September 18, 2024, the USPTO issued a Final Order concluding that "the signatures of the practitioner which appear in this application are in fact false signatures[,]" consequently imposing sanctions and terminating the '688 Application under 37 C.F.R. § 11.18(c). AR 476-77.  The Order further "recognized that the applicant and other persons or entities involved in the application *may* have been unaware of the conduct at issue." AR 477 (emphasis added).  However, the Order concluded that "this consideration does not alleviate the rule violations" given the well-

4

established law "that a party is bound by the acts of their representative." *Id.* The USPTO issued sanctions in the form of: (1) terminating the proceedings on the '688 Application; (2) "[p]recluding the submission of any petition to revive this application or any petition to withdraw a holding of abandonment"; (3) "[p]recluding the submission of an Application Data Sheet or any other paper which includes a claim of benefit to the filing date of this application"; and (4) striking all documents with the signature of Jie Yang. AR 479-80.

On February 20, 2025, Plaintiff filed a Complaint challenging the USPTO's sanctions under the APA, 5 U.S.C. § 706(2). Dkt. 1. On June 4, 2025, Plaintiff filed a Motion for Summary Judgment. Dkt. 16. On July 9, 2025, Defendants filed a Cross-Motion for Summary Judgment. Dkt. 21.

**Legal Standard**

### *Summary Judgment*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Generally, to survive a Rule 56 motion for summary judgment, a party must go beyond the pleadings and cite to its own affidavits, depositions, answers to interrogatories, and/or admissions on file to show that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "However, '[i]n a case involving review of a final agency action under the [APA] ... the standard set forth in Rule 56(c) does not apply because of the limited role of a court reviewing that administrative record." *Thompson v. United States*, 119 F. Supp. 3d 462, 467 (E.D. Va. 2015) (alterations and omission in original) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006)). Because the APA "confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency . . . there can be no genuine

5

issue of material fact in an APA action." *Shipbuilders Council of Am. v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011) (citations omitted).

### Judicial Review of Agency Action

Under the APA, this Court may set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.'" *Motor Vehicle Mfrs. Ass'n. of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court must "perform only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (cleaned up) (quoting *Md. Dep't of Human Res. v. USDA,* 976 F.2d 1462, 1475 (4th Cir. 1992)).

### Discussion

Plaintiff seeks summary judgment on the grounds that Defendants acted arbitrarily and capriciously in imposing sanctions against DAC. Dkt. 17. Plaintiff contends the USPTO's termination of the '668 Application "runs afoul of the applicable regulations and established by Federal Circuit precedent" because Plaintiff did not have knowledge of the fraudulent signatures or an intent to defraud. *Id.* at 12. Accordingly, Plaintiff contends that the USPTO abused its discretion in levying sanctions because it imposed "unjustified and excessive" sanctions, failed to "appropriately weigh relevant factors" in imposing sanctions, and acted contrary to the evidence. *Id.* at 14-25. Conversely, Defendants' Cross-Motion argues that Plaintiff is responsible for

6

W&K's actions, where W&K acted as Plaintiff's representative. Dkt. 23[5] at 15-23. Accordingly, Defendants contend that the USPTO acted properly in finding that Plaintiff had violated the duty of candor and imposing a sanction. *Id.* at 25-26.

The parties do not dispute the facts surrounding the unauthorized use of Practitioner Jie Yang's signature on Plaintiff's patent application. *See* Dkt. 17 at 18; Dkt. 26 at 6. The crux of this dispute turns on whether Plaintiff is responsible for the acts of its representative, Dr. Wang and W&K, in the patent approval process, where Plaintiff had no knowledge or participation in the misconduct.

The standard of review here is highly deferential. *Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.,* 53 F.3d 1395, 1408 (4th Cir. 1995). In the context of agency decisions to impose sanctions, the "views of the [agency head] as to the appropriate sanction in a given case of violation are entitled to very great, if not conclusive, weight." *Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975). An agency's "choice of sanction ... (is) not to be overturned unless ... it (is) 'unwarranted in law or ... without justification in fact ....'" *Id.* (quoting *Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 186 (1973)).

Applying this deferential standard, the Court agrees with Defendants and finds that the USPTO acted neither contrary to law when imputing W&K's actions onto Plaintiff nor in an arbitrary and capricious manner in imposing sanctions.

### *Principal-Agent Relationship*

As an initial matter, the Court finds that the agency did not err in determining that Plaintiff was responsible for the actions of W&K. It is well-established under agency law that principals

---

[5] The brief filed under Dkt. 23 does not include page numbers. Accordingly, the pincites refer to the page number on the docket headers.

are responsible for the actions of their agents or representatives. *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962) (holding that district court did not abuse its discretion in dismissing plaintiff's case when plaintiff's counsel failed to appear for a scheduled pre-trial conference). In *Link*, the Supreme Court rejected petitioner's contention that dismissal of his claim based on counsel's unexcused conduct imposes an unjust penalty on the client. *Id.* at 633. The Court reasoned that the client voluntarily chose this attorney as his representative and cannot avoid the consequences of the acts or omissions of this "freely selected agent." *Id.* at 634.

In keeping, courts routinely impose penalties onto legal parties for the actions or omissions of their attorneys, especially where "a party voluntarily chooses his attorney as his representative in the action." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 (4th Cir. 2010) (quoting *Link*, 370 U.S. at 633-34); *see also Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 395 (4th Cir. 1994) (relying on *Link* to impose penalty on party for lawyer's action); *In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651, 659-60 (E.D. Va. 1999) ("The Court finds that no tenable explanation exists for the failure of the attorneys to respond to the varied pleadings in this case that would serve to excuse the Claimant from the defaults of her counsel."); *Singhal v. Mentor Graphics Corp.*, 328 F. App'x 648, 650 (Fed. Cir. 2009) (discrediting the plaintiff's argument that "his response filed by his lawyer was contrary to his instructions" because a "litigant is bound by the acts or omissions of his chosen lawyer.").

Similarly, parties in proceedings before the USPTO bear responsibility for the consequences of their attorneys' acts or omissions. *See Japanese Found. for Cancer Rsch. v. Lee*, 773 F.3d 1300, 1309 (Fed. Cir. 2014) (deferring to the agency's judgment that any "miscommunications between the [patentee] and its attorney of record did not excuse the actions of the attorney" where "patentee provided specific authority to its attorney to file a disclaimer by

8

filing a power of attorney to prosecute the underlying application and to transact all business in the PTO connected therewith[.]"); *see also Huston v. Ladner*, 973 F.2d 1564, 1567 (Fed. Cir. 1992) (noting that if "an attorney's [misconduct] constitutes good cause for failing to meet a PTO requirement, the PTO's rules could become meaningless [and] [p]arties could regularly allege attorney [misconduct] in order to avoid an unmet requirement.").

The instant case is no different. As the record demonstrates, Plaintiff retained W&K and granted it with power of attorney. AR 3; *see* Restatement (Third) Of Agency § 1.04 (2006) ("[P]ower of attorney is an instrument that states an agent's authority."). During its representation of Plaintiff in the patent application process, W&K submitted Jie Yang's false signatures in violation of the duty of candor and good faith under 37 C.F.R. § 1.56 and the duty of reasonable inquiry under 37 C.F.R. § 11.18(b)(2)(i). On this record and the aforementioned legal precedent, the agency did not err in imputing W&K's actions to Plaintiff.

Plaintiff makes several arguments suggesting that the ordinary principles of agency law do not apply here. None passes muster. First, Plaintiff attempts to distinguish *Link* from the instant case. *Link*, 370 U.S. at 632 (recognizing that principal responsible for acts of his agent). Specifically, Plaintiff argues that the Supreme Court's reasoning behind holding the plaintiff responsible for his lawyer's actions was based, in part, on the "escape hatch" under Federal Rule 60(b). Dkt. 17 at 16. Rule 60(b) provides certain reasons to receive relief from a final judgment or order. Fed. R. Civ. P. 60(b). Per Plaintiff, in this case, it "did not have the luxury of an 'escape hatch.'" Dkt. 17 at 16. However, Plaintiff's argument misses the mark. The Court's discussion of Rule 60(b) and the "escape hatch" had nothing to do with whether a principal should be liable for acts of their agent. Instead, it focused on whether Rule 41(b) required the district to provide notice to the plaintiff prior to issuing a dismissal; the Supreme Court noted that even if it did

require notice that Rule 60(b) provided a corrective remedy. [6] *Link*, 370 U.S. at 632. None of that is at issue here. Moreover, contrary to its arguments, Plaintiff is not without alternate relief for its agent's misconduct. As the Supreme Court averred in *Link*, where an "attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Id.* at 634 n.10; *see also Japanese Found. for Cancer Rsch.*, 774 F.3d at 1309 n.6.

Second, Plaintiff argues that "extenuating circumstances" or actions adverse to a principal's interests relieve a principal from the consequences of the agent's actions. Dkt. 26 at 5. However, Plaintiff's relied-upon cases concern a markedly different context and facts: whether state prisoners seeking federal habeas relief could point to external factors with respect to their attorneys to show cause for a procedural default in state court. *Maples v. Thomas*, 565 U.S. 266, 281 (2012) (finding cause where attorney "abandon[ed] his client without notice," and "severed the principal-agent relationship" such that agency principles no longer applied); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (finding the petitioner not responsible for attorney's actions where it implicated the Sixth Amendment's right to counsel).

Nor is the Court persuaded by Plaintiff's arguments that it cannot be held responsible because W&K acted adversely to or intentionally deceived DAC.[7] Dkt. 26 at 7 (citing *Downs v. McNeil*, 520 F.3d 1311, 1320-21 (11th Cir. 2008) (finding exception to ordinary agency rules where attorney lied to client about having filed legal issue, therefore acting adversely to client's

---

[6] Further, the Court referred to Rule 60(b) to demonstrate why lack of notice of the district court's order dismissing the matter was of "less consequence" in light of a potential corrective remedy but made clear that lack of notice alone did not violate due process. *Link*, 370 U.S. at 632.

[7] Insofar as Plaintiff argues that an attorney's gross negligence cannot be imputed to a client, Plaintiff relies upon other circuits' law and does not point to any binding law in this Circuit. *See* Dkt. 26 at 8-9.

interests)). Indeed, W&K's actions served to advance Plaintiff's patent application, and, therefore, W&K was acting in the applicant's interests. Further, Plaintiff does not point to any facts in the record suggesting that W&K intentionally misled the patent applicant about the unauthorized signature. Indeed, the record itself is inconsistent as to whether Plaintiff had any contact with Jie Yang. *See supra* n.3. As Defendants aver, "[i]t would be entirely unworkable for the system to permit a party to disclaim certain portions of representation by unilaterally declaring them, after the fact, to be unauthorized." Dkt. 27 at 3.

Accordingly, the Court finds that the USPTO acted in accordance with the law when finding Plaintiff responsible for the actions of its representative.

### *Arbitrary and Capricious Standard of Review*

The Court further concludes that the agency did not act arbitrarily or capriciously in imposing sanctions. Under the arbitrary and capricious standard, the Court looks to whether the agency made a "rational connection between the facts found and the choice made." *Ohio Valley Envt'l Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43)). When imposing sanctions, the PTO considers a series of non-exhaustive factors:

> whether the improper conduct was willful or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected an entire application, or only one particular paper; whether the person has engaged in similar conduct in other matters; whether the conduct was intended to injure; what effect the conduct had on the administrative process in time and expense; whether the responsible person is trained in law; what is needed to deter that person from repetition in the same case; and what is needed to deter similar conduct by others.

*Changes to Representation of Others Before the United States Patent and Trademark Office*, 73 Fed. Reg. 47650, 47652, 2008 WL 3434128 (Aug. 14, 2008).

Here, the Court finds that the agency properly assessed the factors. The PTO determined

11

that "documents containing false signatures [of Jie Yang] were submitted to the USPTO in thousands of applications," as part of a "deliberate scheme, knowingly executed over a prolonged period of time." AR 478. In light of the PTO's interest in "[p]rotecting the integrity of the U.S. patent system," the agency concluded that it could not "rely on the truth or accuracy of information submitted" by W&K and accordingly terminated all affected patents. AR 479.

Plaintiff does not contest these findings. Rather, Plaintiff highlights a number of factors the agency *did not* consider, including:

> [w]hether the false signatures infected the entire application or a small set of particular papers; [w]hether DAC had engaged in similar conduct in other matters; [w]hether DAC's conduct was intended to injure, [w]hether DAC is trained in the law; [w]hat is needed to deter DAC from repetition of similar conduct; [and] [w]hat is needed to deter similar conduct by others.

Dkt. 26 at 12. Further, per Plaintiff, the agency's decision to impose the same sanctions on thousands of other patent documents with Jie Yang's unauthorized signature evinces the lack of rational connection between the facts and the agency's outcome. *Id.* at 16. As to the former, the USPTO is not required to consider every factor; instead it is within its discretion to decide which factors are most relevant.

As the Court determined earlier, where W&K served as representative to DAC, DAC's knowledge or intent are not material considerations. Further, termination of the patent application—along with thousands of others affected by W&K's misconduct—was reasonable considering W&K's explicit deception and the need to protect the integrity of the patent system. Even if the Court "disagreed with the PTO's position as a matter of policy, [it] must not substitute [its] own judgment for that of the agency." *Japanese Found. for Cancer Rsch.*, 773 F.3d at 1309; *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1116 (4th Cir. 2014).

Accordingly, in deference to the USPTO's findings, the Court concludes that the USPTO

12

did not act arbitrarily or capriciously in imposing sanctions onto Plaintiff.

## Conclusion

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment.

A separate order will issue.

Entered this _25th_ day of March, 2026.
Alexandria, Virginia.

_____ /s/
Patricia Tolliver Giles
United States District Judge

13

/s/
_____
Patricia Tolliver Giles
United States District Judge